**Clayo SYLVE**

v.

**HSPV, L.L.C., and Conagra, Inc.**

**No. CIV. A. 97–2015.**

United States District Court,
E.D. Louisiana.

April 16, 1998.

**838**

Edmond Joseph Harris, Valteau, Harris, Koenig & Mayer, New Orleans, LA, for Plaintiff.

James K. Irvin, David Conroy, Alanna S. Arnold, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, LA, Roger J. Miller, Omaha, NE, for Defendants.

## ORDER AND REASONS

FALLON, District Judge.

Before the Court is defendants'[1] motion for summary judgment, seeking a dismissal of plaintiff's claims that his employment was terminated in violation of the Age Discrimination in Employment Act ("ADEA"), and that the circumstances surrounding his termination amounted to intentional infliction of emotional distress. Because the Court finds that there is no issue of genuine material fact regarding either plaintiff's age discrimination or intentional infliction of emotional distress claims, defendants motion is GRANTED, and plaintiff's claims are dismissed.

---

1. Conagra states, and plaintiff has not objected, that HSPV, L.L.C. was not plaintiff's employer, and thus that any claim plaintiff has must be directed at Conagra. However, for clarity sake the Court will refer to "defendants."

## I. BACKGROUND

Plaintiff, then 48, was hired by defendants on September 22, 1994 to work at their Myrtle Grove grain elevator. Plaintiff was hired by James Cook, then 54, the plant manager. (Pla.'s Dep. at 15.) Plaintiff was promoted to the position of labor foreman, a management (non-union) position on April 23, 1995. Soon after, plaintiff was joined at the foreman rank by Pelly Weaver, Elliot Cosse, and Leonard Riley.

Plaintiff does not dispute that during fiscal year 1996, the amount of grain handled by the defendants was cut in half, from 20,514,-569 million bushels per month during the first six months to an average of 10,019,21 bushels per month during the last six months. It is uncontested that in April of 1996, in response to the dramatic drop in business, twenty-eight of the sixty-six hourly workers employed at the plant were laid off. Plaintiff also does not contradict that in response to the work force reduction, Cook and others sought to lay off two of their four labor foremen. Plaintiff does not attack or even mention the performance reviews that Cook and Vice President Daniel Hernandez claim to have relied on in deciding whom to cut. Plaintiff was laid off on May 17, 1996.

Defendants assert that following plaintiff's release, another opening arose at the plant, and defendants tried numerous times to contact plaintiff, both by phone and by mail, about returning to work, leaving several messages requesting that he contact the plant. After approximately two weeks of allegedly attempting to contact plaintiff, plaintiff's employment was terminated on June 12, 1996, and another laid off employee was recalled. Plaintiff contends that he never received any communication regarding defendants' desires to rehire or recall him, and that when he was released on May 17, Cook informed him that he had been terminated, not simply laid off.

## II. ANALYSIS

### 1. Plaintiff's Claims Under the ADEA

■ To maintain an age discrimination action, plaintiff has two avenues: "[a] plaintiff can prove discriminatory animus by direct evidence or by an indirect or inferential method of proof." *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1216 (5th Cir.1995). Plaintiff has not produced any direct evidence of discrimination. Thus, plaintiff must establish a prima facie case of age discrimination by indirect or inferential proof.

■ To establish a prima facie case, the plaintiff must demonstrate by a preponderance of the evidence that: "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of the discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992 (5th Cir.1996) (internal and external citations omitted).

■ Plaintiff appears to have made out a prima facie case of age discrimination. Plaintiff was: (1) discharged; (2) qualified for the position; (3) over 40, and thus within the protected class at the time of the discharge; and (4) replaced by someone outside the protected class who was also younger, given that the two foremen retained were 33 and 34.[2]

Once plaintiff has made a prima facie case, he enjoys a rebuttable presumption of intentional discrimination, shifting the burden to the defendants to "articulate a legitimate, nondiscriminatory reason for the questioned employment action." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir.1996). An employer may sustain this burden by "introducing admissible evidence of an explanation that would be 'legally sufficient to justify a judg-

---

**2.** Defendant has chosen to contest that plaintiff can present a prima facie case. However, such an argument is without merit. Whether plaintiff was terminated or only laid off on May 17 is irrelevant, as plaintiff was terminated by June 12, 1996 in any event. According to the performance reviews submitted by defendants, plaintiff was doing at least a satisfactory job, and thus

was qualified. Lastly, while plaintiff was not "replaced," the law is clear that the " 'reduction in force' standard applies ... when a company lays off protected individuals, while retaining younger employees in similar positions," thus eliminating the need to show replacement. *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 654 (5th Cir.1996).

ment for the defendant.'" *Guthrie v. Tifco Industries,* 941 F.2d 374, 376 (5th Cir.1991).

■ Defendants have produced ample evidence of a legitimate, nondiscriminatory reason for letting plaintiff go. First, defendants only discharged plaintiff as part of a series of massive layoffs in response to a very significant downturn in defendants' business. Defendants faced a decision not whether to retain or let go an employee, but which employees to retain and which to let go, evidence that plaintiff was not "targeted" for release.

Second, in deciding between which of the four foremen to let go, defendants have submitted Performance Review forms for each foremen, evaluating eleven separate performance factors and culminating in overall performance scores. Plaintiff received six "3s," three "4s" and two "5s" on his form, completed on February 7, 1996, over three months before he was first released. Plaintiff was given an overall performance rating of "3." The other released foreman, Pelly Weaver, received two "2s" and nine "3s," for an overall performance rating of "3." By contrast, Elliot Cosse, one of the two retained foremen, received two "3s," four "4s," and five "5s," for an overall performance rating of "4." Leonard Riley received even higher scores: two "3s," one "4," and eight "5s," for an overall performance rating of "5." This is objective evidence that its decision to retain Cosse and Riley instead of plaintiff (and Weaver) was based on non-discriminatory motives.

Third, defendants assert that plaintiff was only laid off on May 17, 1996, and not discharged until June 12, 1996. As noted above, when another opening arose at the plant several employees, according to numerous affidavits, tried many times to contact plaintiff, both by phone and by mail. It was only after approximately two weeks of allegedly attempting to give the position to the plaintiff that defendants hired another laid of employee for the vacant position. Defendants' attempts to bring back a recently departed employee lessens the likelihood that plaintiff's original release was motivated by a discriminatory animus.

Fourth, plaintiff was hired by defendants by Cook. Cook was also the individual who recommended that plaintiff be released less than two years later. Since the same individual hired and fired plaintiff, defendants enjoy the "inference that age discrimination was not the motive behind ... termination," since

claims that employer animus exists in termination but not in hiring seem irrational. From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.

*Brown v. CSC Logic, Inc.,* 82 F.3d 651, 658 (5th Cir.1996) (internal and external citations omitted). The existence of such a situation "buttresses" a finding that an employer's proffered reasons for a dismissal are genuine. *Faruki v. Parsons S.I.P., Inc.,* 123 F.3d 315, 320 (5th Cir.1997).

Fifth, Cook was in plaintiff's protected class himself. "The fact that the actor involved in both employment decisions is also a member of the protected class only enhances the inference" that the employer had no discriminatory animus. *Brown,* 82 F.3d at 658. The enhancement is itself strengthened by the fact that Cook was even six years older than plaintiff.

■ The defendants having introduced ample evidence of a legitimate, non-discriminatory reason to terminate plaintiff, "the burden returns to the employee to prove that this reason is not true but a mere pretext for age discrimination." *Bodenheimer v. PPG Indus. Inc.,* 5 F.3d 955, 957 (5th Cir.1993). The Court may "not disregard the defendant's explanation without countervailing evidence that it was not the real reason for the discharge." *Stults v. Conoco, Inc.,* 76 F.3d 651, 657 (5th Cir.1996) (external and internal citations omitted). Plaintiff must produce evidence sufficient to "allow a rational factfinder to make a reasonable inference that age was a determinative reason for the employment decision." *Id.*

Plaintiff first contends that he was employed at the same plant for almost two decades prior to his termination. However, the plant was only acquired by defendants in 1994, and plaintiff was interviewed and hired

by defendants thereafter. Plaintiff's previous work experience is immaterial to his status as an employee of defendants. Plaintiff next contends that he was "four or five months" senior to his fellow foremen, and that defendants should have employed a "first hired, last fired" policy. (Pla.'s Dep. at 69–70.) Plaintiff has not provided any dates to justify the assertion of his seniority. Even if true, while "first hired, last fired" may have been the rule while plaintiff was a non-management employee, it was not the policy for management employees.

Third, plaintiff contends that Cooks statements when he was released on May 17, 1996 caused him to believe that he had been terminated, not laid off, and that post-release he was "trawling for shrimp" and never received any communication regarding defendants' desires to rehire or recall him.[3] The fact that plaintiff did not receive the messages in no way effects the existence of defendants' many attempts to bring plaintiff back nor its lessening of the likelihood that plaintiff's original release was motivated by a discriminatory animus.

Fourth, plaintiff asserts that he "had more experience and could perform more varied job functions than the two retained foremen." Plaintiff offers nothing to support this assertion. Comparing his performance evaluation, completed over three months before he was first released, with the evaluations of the two retained foremen, tends to negate any inference that he was more qualified than the retained foremen.

The Court finds that plaintiff has failed to create a genuine fact issue whether defendants' stated reason for plaintiff's termination was pretextual. "The ADEA was not intended to be a vehicle for judicial second-guessing of business decisions." *Guthrie v. Tifco Industries,* 941 F.2d 374, 376 (5th Cir. 1991) (external and internal citations omitted). Plaintiff's above assertions, along with the remaining evidence in the case, do not "taken as a whole (1) create[ ] a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) create[ ] a reasonable inference that age was a determinative factor in the actions of which plaintiff complains." *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 992 (5th Cir.1996). Thus plaintiff's age discrimination claims must be dismissed.

2. *Plaintiff's Claims for Intentional Infliction of Emotional Distress*

Under Louisiana law,

in order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

*White v. Monsanto Co.,* 585 So.2d 1205, 1209 (La.1991). Plaintiff's burden is "a heavy one." *Scamardo v. Dunaway,* 694 So.2d 1041, 1042 (La.App. 5 Cir.1997). Plaintiff does not even address intentional infliction of emotional distress in his opposition to summary judgment, and the Court finds that defendants' actions did not even approach the level of outrageous, extreme, atrocious, or utterly intolerable conduct that would allow a jury to find liability. *White,* 585 So.2d at 1209. Therefore, plaintiff's intentional infliction of emotional distress claims must be dismissed.

### III. CONCLUSION

For the foregoing reasons, defendants motion for summary judgment is GRANTED, and all of plaintiff's claims are DISMISSED.

---

3. Pla.'s Aff. Plaintiff notes with particularity that Cook's letter offering him a new job was received by plaintiff's father, and not the plaintiff. This is immaterial as it relates to defendants' actions regarding his release.